PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

AO 241 (Rev. 12/04)

| **United States District Court** | District |
| | Northern District of Ohio, Eastern Division |
| Name (under which you were convicted): Evin King | Docket or Case No. |
| Place of Confinement Franklin Medical Center 1990 Harmon Ave Columbus, Ohio 43223 | Prisoner No. 302-804 |
| Petitioner (include the name under which you were convicted) Evin King | Respondent (authorized person having custody of petitioner) Francisco Pineda, Warden |
| The Attorney General of the State of: Ohio Mike DeWine | |

**PETITION**

1. (a) Name and location of court that entered the judgment of conviction you are challenging  Cuyahoga County Court of Common Pleas, Cleveland, Ohio.

   (b) Criminal docket or case number (if you know)  Common Pleas Case Number CR-94-312576

2. (a) Date of the judgment of conviction (if you know)  February 28, 1995

   (b) Date of sentence  February 28, 1995

3. Length of sentence  15-years-to-life.

4. In this case, were you convicted on more than one count or of more than one crime?  ☐ Yes  ☒ No

5. Identify all crimes of which you were convicted and sentenced in this case  Ohio Revised Code 2903.02, murder.

6. (a) What was your plea?  (Check one)

   ☒ (1) Not guilty          ☐ (3) Nolo contendere (no contest)
   ☐ (2) Guilty              ☐ (4) Insanity plea

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?  (N/A)

   (c) If you went to trial, what kind of trial did you have?  (Check one)

   ☒ Jury          ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?
   Yes ☒          No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☒          No ☐

9. If you did appeal, answer the following:

    (a) Name of court  Cuyahoga County, Ohio, Court of Appeals

    (b) Docket or case number (if you know)  Court of Appeals Case Number 68726

    (c) Result  Judgment of the trial court affirmed.

    (d) Date of result (if you know)  November 14, 1996

    (e) Citation to the case (if you know)  *State v. King*, 8th Dist. Cuyahoga No. 68726, 1996 Ohio App. LEXIS 4945 (Nov. 14, 1996).

    (f) Grounds raised See page 20, attached.

    (g) Did you seek further review by a higher state court?    Yes ☒    No ☐

        If yes, answer the following:

        (1) Name of court  Supreme Court of Ohio

        (2) Docket or case number (if you know)  97-153

        (3) Result  The court denied leave to appeal and dismissed the case as not involving any substantial constitutional question.

        (4) Date of result (if you know)  May 28, 1997

        (5) Citation to the case (if you know)  *State v. King*, 78 Ohio St. 3d 1453, 677 N.E.2d 814 (1997).

        (6) Grounds raised  See page 20, attached.

    (h) Did you file a petition for certiorari in the United States Supreme Court?  Yes ☐    No ☒

        If yes, answer the following:

        (1) Docket or case number (if you know) _____

        (2) Result _____

        (3) Date of result (if you know) _____

        (4) Citation to the case (if you know) _____

10. Other than the direct appeals listed above, have you previously filed any petitions, applications, or motions concerning this judgment of conviction in any state court?    Yes ☒    No ☐

11. If your answer to 10 was "Yes," give the following information:

(a) (1) Name of court   Cuyahoga County Court of Common Pleas

(2) Docket or case number (if you know)   Common Pleas Case Number CR-94-312576

(3) Date of filing (if you know)   October 25, 2004

(4) Nature of the proceeding   Application for postconviction DNA testing

(5) Grounds raised   Mr. King has a statutory and constitutional right to postconviction DNA testing (which includes a search for all biological evidence collected, or, in the alternative, discovery to determine the existence of biological evidence, as well as a request for relief and a declaration of actual innocence if Mr. King is excluded from the results of testing).

(6) Did you receive a hearing where evidence was given on your petition, application or motion?
Yes ☐   No ☒

(7) Result   Postconviction DNA testing granted; trial court held that if a DNA profile from the fingernail scrapings matched the semen profile a strong argument could be made that Ms. Hudson scratched her assailant as he raped and murdered her. DNA exclusion results would eliminate King as a suspect.  The trial court found that no reasonable factfinder would have found King guilty had DNA exclusion results been presented.

(8) Date of result (if you know)   April 23, 2008

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court   Cuyahoga County Court of Common Pleas

(2) Docket or case number (if you know)   Common Pleas Case Number CR-94-312576

(3) Date of filing (if you know)   May 12, 2010

(4) Nature of the proceeding   Petition for postconviction relief

(5) Grounds raised   See page 21

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?
Yes ☒   No ☐

(7) Result   Relief denied. The DNA report stated that the Y-STR profile from the vaginal swabs is consistent with the Y-STR profile of the fingernail scrapings--and Mr. King is excluded from both.  The only new evidence is that the DNA material under the fingernails is not the defendant's and that it was consistent with the vaginal DNA material.  The trial court concluded that this particular additional information does not by clear and convincing evidence establish in the Court's mind the actual innocence of the

Defendant.  Since the evidence at trial already excluded King from the vaginal swabs, these additional facts would not be outcome determinative.

    (8)    Date of result (if you know)  November 15, 2011

  (c)    If you filed any third petition, application, or motion, give the same information:

        (1)    Name of court   Cuyahoga County Court of Common Pleas

        (2)    Docket or case number (if you know)  Common Pleas Case Number CR-94-312576

        (3)    Date of filing (if you know)   June 19, 2014

        (4)    Nature of the proceeding   Civil Rule 60(B)

        (5)    Grounds raised  See page 21

        (6)    Did you receive a hearing where evidence was given on your petition, application, or motion?

        Yes ☐       No ☐

        (7)    Result  no result yet

        (8)    Date of result (if you know)   N/A

  (d)    Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

        (1) First petition     Yes ☐    No ☒

        (2) Second petition   Yes ☒    No ☐

        (3) Third petition     Yes ☐    No ☒

  (e)    If you did not appeal to the highest state court having jurisdiction, explain why you did not   See page 22, attached

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

    CAUTION: To  proceed in the federal  court, you  must ordinarily  first exhaust (use up) your available state-court  remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**

(a)     Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

  See Facts section (pages 22-30) and subsequent discussion (p. 31) for Ground I.

(b)     If you did not exhaust your state remedies on Ground One, explain why:   Ground One is partially exhausted.  The failure

  to exhaust is a result of ineffective assistance of postconviction counsel, as postconviction counsel failed to investigate

  and discover portions of the factual basis for this claim.  Mr. King has filed a 60(B) motion in state court, and will file a

  successor postconviction in state court and motion to stay and abey in this Court so that he can raise and exhaust the remaining

  factual portion of this claim.

(c)     **Direct Appeal of Ground One:**

   (1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐   No ☒

   (2)  If you did not raise this issue in your direct appeal, explain why:  Counsel on direct appeal raised sufficiency of the

    evidence as an assignment of error.  Additionally, evidence supporting this claim is largely outside the trial record.

(d)     **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

          Yes ☒   No ☐

   (2) If your answer to Question (d)(1) is "Yes", state:

   Type of motion or petition     Petition for postconviction relief

   Name and location of the court where the motion or petition was filed:   Cuyahoga County Court of Common Pleas,

    Cleveland, Ohio

   Docket or case number (if you know)    Common Pleas Case Number CR-94-312576

   Date of the court's decision    November 15, 2011

   Result (attach a copy of the court's opinion or order, if available)    Attached as Exhibit C

   (3)  Did you receive a hearing on your motion or petition?          Yes ☒   No ☐

(4) Did you appeal from the denial of your motion or petition?     Yes ☒   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   Yes ☒   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed  Eighth District Court of Appeals, Cleveland, Ohio

Docket or case number (if you know)  No. 97683

Date of the court's decision  September 27, 2012

Result (attach a copy of the court's opinion or order, if available)  attached as Exhibit D

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue

(e) **Other Remedies**  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One  a Civil Rule 60(B) motion has been filed to exhaust additional facts that support this Ground for relief


**GROUND TWO:**

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

  See Facts section (pages 22-30) and subsequent discussion (p. 32) for Ground II.


(b)   If you did not exhaust your state remedies on Ground Two, explain why:  Ground Two is partially exhausted.

The failure to exhaust is a result of ineffective assistance of postconviction counsel, as postconviction counsel failed to investigate and discover portions of the factual basis for this claim.  Mr. King has filed a 60(B) motion in state court, and will file a successor postconviction in state court and motion to stay and abey in this Court so that he can raise and exhaust the remaining factual portion of this claim.

(c)   **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:   Counsel on direct appeal raised sufficiency of the evidence as an assignment of error.  Additionally, evidence supporting this claim is largely outside the trial record.

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☒    No ☐

(2)  If your answer to Question (d)(1) is "Yes", state:

Type of motion or petition ____Petition for postconviction relief_____

Name and location of the court where the motion or petition was filed: _Cuyahoga County Court of Common Pleas,____

_Cleveland, Ohio_____

Docket or case number (if you know)___Common Pleas Case Number CR-94-312576_____

Date of the court's decision ___November 15, 2011_____

Result (attach a copy of the court's opinion or order, if available) ___Attached as Exhibit C_____

(3)  Did you receive a hearing on your motion or petition?            Yes ☒    No ☐

(4)  Did you appeal from the denial of your motion or petition?        Yes ☒    No ☐

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    Yes ☒    No ☐

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed _Eighth District Court of Appeals, Cleveland, Ohio_____

Docket or case number (if you know) ___No. 97683_____

Date of the court's decision ___September 27, 2012_____

Result (attach a copy of the court's opinion or order, if available) ___attached as Exhibit D_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue _____

(e)  **Other Remedies**  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One _a Civil Rule 60(B) motion has been filed to exhaust additional facts that

support this Ground for relief_____

**GROUND THREE:**

(a)    Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

_See Facts section (pages 22-30) and subsequent discussion (p. 33) for Ground III._____

(b)    If you did not exhaust your state remedies on Ground Three, explain why: _The failure to exhaust is a result of ineffective

assistance of postconviction counsel, as postconviction counsel failed to investigate and discover portions of the factual basis for this

claim.  As a result, postconviction counsel failed to raise this claim.  Mr. King has filed a 60(B) motion in state court, and will file a

successor postconviction in state court and motion to stay and abey in this Court so that he can raise this claim and exhaust the

remaining factual portion of this claim._____

**(c)    Direct Appeal of Ground Three:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐    No ☒

(2)  If you did not raise this issue in your direct appeal, explain why:    this claim relies on newly presented evidence

which was outside the record and unavailable for argument on direct appeal

**(d)    Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☐    No ☒

(2)  If your answer to Question (d)(1) is "Yes", state:

Type of motion or petition _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know)_____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available) _____

_____

(3)  Did you receive a hearing on your motion or petition?                    Yes ☐  No ☐

(4)  Did you appeal from the denial of your motion or petition?              Yes ☐  No ☐

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  Yes ☐  No ☐

(6)  If your answer to Question (d)(4) is "Yes," state:


Name and location of the court where the appeal was filed  _____

_____

Docket or case number (if you know) _____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available) _____

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue _____

**(e)  Other Remedies**  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground Three  Mr. King has filed a 60(B) motion in state court, and will file a successor

postconviction in state court and motion to stay and abey in this Court so that he can raise and exhaust both the claim and the

underlying facts that support the claim through a successor postconviction petition.

**GROUND FOUR:**

(a)    Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

See Facts section (pages 22-30) and subsequent discussion (pp. 34-38)for Ground IV.

(b)    If you did not exhaust your state remedies on Ground Four, explain why:  Ground Four is partially exhausted as some of the facts and claim were raised on direct appeal.  However, much of Ground Four is not exhausted in state court due to the ineffectiveness of postconviction counsel.  Postconviction counsel was ineffective, as postconviction counsel failed to investigate and discover portions of the factual basis for this claim.  Mr. King has filed a 60(B) motion in state court, and will file a successor postconviction in state court and motion to stay and abey in this Court so that he can raise and exhaust both claim and the facts in support of this claim.

(c)    **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐    No ☒

(2)  If you did not raise this issue in your direct appeal, explain why: this claim is based on facts outside of the trial record.  Additionally, this claim relies on both new and newly presented evidence.  As a result, this evidence was unavailable for purposes of direct appeal.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

Yes ☐   No ☒

(2)  If your answer to Question (d)(1) is "Yes", state:

Type of motion or petition _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know)_____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available) _____

_____

(3)  Did you receive a hearing on your motion or petition?                    Yes ☐   No ☐

(4)  Did you appeal from the denial of your motion or petition?            Yes ☐   No ☐

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   Yes ☐   No ☐

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed _____

_____

Docket or case number (if you know) _____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available) _____

_____

_____

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue _____

_____

(e) **Other Remedies**  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground Four __Mr. King has filed a 60(B) motion in state court, and will file a successor

postconviction in state court and motion to stay and abey in this Court so that he can raise and exhaust both the claim and the

 underlying facts that support the claim through a successor postconviction petition.

_____

**GROUND FIVE**

(a)    Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

       See Facts section (pages 22-30) and subsequent discussion (pp. 39-40) for Ground V

(b)    If you did not exhaust your state remedies on Ground Five, explain why:  direct appeal counsel cannot raise their own ineffectiveness

and Mr. King, without competent counsel, could not identify and properly litigate these issues.

    (c)    **Direct Appeal of Ground Five:**

      (1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐   No ☒

      (2)  If you did <u>not</u> raise this issue in your direct appeal, explain why:  direct appeal counsel cannot raise their own

ineffectiveness and Mr. King, without competent counsel, could not identify and properly litigate these issues.

(d)    **Post-Conviction Proceedings:**

      (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        Yes ☐   No ☒

      (2)  If your answer to Question (d)(1) is "Yes", state:

      Type of motion or petition _____

      Name and location of the court where the motion or petition was filed: _____

      Docket or case number (if you know)_____

      Date of the court's decision _____

      Result (attach a copy of the court's opinion or order, if available) _____

      (3)  Did you receive a hearing on your motion or petition?        Yes ☐   No ☐

      (4)  Did you appeal from the denial of your motion or petition?      Yes ☐   No ☐

      (5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  Yes ☐   No ☐

      (6)  If your answer to Question (d)(4) is "Yes," state:

      Name and location of the court where the appeal was filed _____

      Docket or case number (if you know) _____

      Date of the court's decision _____

      Result (attach a copy of the court's opinion or order, if available) _____

      _____

      _____

      (7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue _

(e)  **Other Remedies**  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust

your state remedies on Ground Five _____

_____

**GROUND SIX**

(a)     Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)
            See Facts section (pages 22-30) and subsequent discussion (pp. 41-45) for Ground VI._____

(b)     If you did not exhaust your state remedies on Ground Six, explain why:   postconviction counsel cannot raise their own ineffectiveness;

new postconviction counsel filed a 60(B) and will file a successor postconviction petition in state court, along with a motion to stay and

abey with this Court._____

    (c)     **Direct Appeal of Ground Six:**

        (1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐    No ☐

        (2)  If you did <u>not</u> raise this issue in your direct appeal, explain why:     claim based primarily on evidence outside the trial

record

(d)     **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

            Yes ☐    No ☒

        (2)  If your answer to Question (d)(1) is "Yes", state:

        Type of motion or petition _____

        Name and location of the court where the motion or petition was filed: _____

        Docket or case number (if you know)_____

        Date of the court's decision _____

        Result (attach a copy of the court's opinion or order, if available) _____

        (3)  Did you receive a hearing on your motion or petition?                    Yes ☐    No ☐

        (4)  Did you appeal from the denial of your motion or petition?               Yes ☐    No ☐

        (5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? Yes ☐    No ☐

        (6)  If your answer to Question (d)(4) is "Yes," state:

        Name and location of the court where the appeal was filed _____

        Docket or case number (if you know) _____

        Date of the court's decision _____

        Result (attach a copy of the court's opinion or order, if available) _____

        _____

        _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue _____ _____

_____

(e) **Other Remedies**  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust

your state remedies on Ground Six _____ 60(B) motion has

been filed in state court and a successor postconviction petition will be filed in state court, along with a motion to stay and abey with this

Court _____

**GROUND SEVEN**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

      See Facts section (pages 22-30) and subsequent discussion (p. 46) for Ground VII._____

(b)  If you did not exhaust your state remedies on Ground Seven, explain why:  Ineffective postconviction counsel failed to uncover facts

      that form the basis for asserting this claim, and, as a result failed to raise this claim.  new postconviction counsel filed a 60(B) and will

      file a successor postconviction petition in state court, along with a motion to stay and abey with this Court._____

(c)  **Direct Appeal of Ground Seven:**

      (1) If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐  No ☒

      (2) If you did <u>not</u> raise this issue in your direct appeal, explain why:  ___ based primarily on evidence outside the trial record

      _____

(d)  **Post-Conviction Proceedings:**

      (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

            Yes ☐  No ☒

      (2) If your answer to Question (d)(1) is "Yes", state:

      Type of motion or petition _____

      Name and location of the court where the motion or petition was filed: _____

      _____

      Docket or case number (if you know)_____

      Date of the court's decision _____

      Result (attach a copy of the court's opinion or order, if available) _____

      _____

      (3) Did you receive a hearing on your motion or petition?                         Yes ☐  No ☐

      (4) Did you appeal from the denial of your motion or petition?                Yes ☐  No ☐

      (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  Yes ☐  No ☐

      (6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed _____

_____

Docket or case number (if you know) _____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available) _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue _____

_____

(e) **Other Remedies**  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust

your state remedies on Ground Seven _____ 60(B) motion has been filed in state court and a successor postconviction petition will be filed

in state court, along with a motion to stay and abey with this Court _____

**GROUND EIGHT**

(a)     Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

          See Facts section (pages 22-30) and subsequent discussion (pp. 47-48) for Ground VIII.

(b)     If you did not exhaust your state remedies on Ground Eight, explain why: _____ Ineffective postconviction counsel failed to uncover

facts that form the basis for asserting this claim, and, as a result failed to raise this claim.  new postconviction counsel filed a 60(B) and

will file a successor postconviction petition in state court, along with a motion to stay and abey with this Court. _____

(c)     **Direct Appeal of Ground Eight:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐   No ☒

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why: _____ evidence of this claim based primarily _____

 on evidence outside the trial record _____

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

          Yes ☐   No ☒

(2) If your answer to Question (d)(1) is "Yes", state:

Type of motion or petition _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know)_____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available) _____

_____

(3)  Did you receive a hearing on your motion or petition?                    Yes ☐  No ☐

(4)  Did you appeal from the denial of your motion or petition?               Yes ☐  No ☐

(5)  If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  Yes ☐  No ☐

(6)  If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed _____

_____

Docket or case number (if you know) _____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available) _____

_____

_____

(7)  If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue _____

_____

(e)  **Other Remedies**  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust

your state remedies on Ground Eight  60(B) motion has been filed in state court and a successor postconviction petition will be filed in state

court, along with a motion to stay and abey with this Court _____

**GROUND NINE**

(a)    Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.)

        See Facts section (pages 22-30) and subsequent discussion (p. 49) for Ground IX. _____

(b)    If you did not exhaust your state remedies on Ground Nine, explain why:   Ineffective postconviction counsel failed to uncover facts

        that form the basis for asserting this claim, and, as a result failed to raise this claim.  new postconviction counsel filed a 60(B) and will

        file a successor postconviction petition in state court, along with a motion to stay and abey with this Court. _____

        (c)    **Direct Appeal of Ground Nine:**

        (1)  If you appealed from the judgment of conviction, did you raise this issue?  Yes ☐   No ☒

        (2)  If you did not raise this issue in your direct appeal, explain why:   evidence in support of this claim is

        based primarily on evidence outside the trial record _____

(d)    **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        Yes ☐   No ☒

(2) If your answer to Question (d)(1) is "Yes", state:

Type of motion or petition _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know)_____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available) _____

_____

(3) Did you receive a hearing on your motion or petition?               Yes ☐   No ☐

(4) Did you appeal from the denial of your motion or petition?          Yes ☐   No ☐

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   Yes ☐   No ☐

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed _____

_____

Docket or case number (if you know) _____

Date of the court's decision _____

Result (attach a copy of the court's opinion or order, if available) _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue _____

_____

(e) **Other Remedies**  Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Nine  60(B) motion has been filed in state court and a successor postconviction petition will be filed in state court, along with a motion to stay and abey with this Court _____

13.  Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?

Yes ☐   No ☒

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

No.  Portions of Grounds for Relief Three and Four, as well as all of Grounds for Relief Five, Six, Seven, Eight, and _____

Nine have not been presented to the highest court having jurisdiction. These grounds were not raised because of ineffective assistance of postconviction counsel, and therefore not present to the highest state court. Mr. King has filed a 60(B) motion in state court, and will file a successor postconviction petition in state court in order to enable presentation of these grounds to the highest state court having jurisdiction.

    (b)    Is there any grounds in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them: Yes, portions of Grounds for Relief Three and Four, and all of Grounds for Relief Five, Six, Seven, Eight, and Nine. These grounds were not raised because of ineffective assistance of postconviction counsel. Mr. King has filed a 60(B) motion in state court, and will file a successor postconviction petition in state court in order to enable presentation of these grounds to the highest state court having jurisdiction.

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    Yes ☐   No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available. _____

_____

_____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    Yes ☒   No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

Cuyahoga County Court of Common Pleas, Cleveland, Ohio; Case No. CR-94-312576;
Type of proceeding: 60(B)
Issues raised: (1) ineffective assistance of postconviction counsel, *Ryan v. Martinez*, 566 U.S. ___, 132 S. Ct. 1309; 182 L. Ed. 2d 272 (2012), (2) due process violations by the State, *Napue v. Illinois*, 360 U.S. 264, 272, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995), *Giglio v. United States*, 405 U.S. 150, 151 (1972), and (3) actual innocence, *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995); *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

16.    Give the name and address, if know, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a)    At preliminary hearing   Rocco Russo, 55 Public Square Ste. 1450, Cleveland, Ohio 44113 (deceased in 2005, Cuyahoga County Probate Case Number 2005EST108362).

    (b)    At arraignment and plea   Same as above.

(c) At trial   Same as above.

(d) At sentencing   Same as above.

(e) On appeal   John Parker, 988 East 185th Street, Cleveland, Ohio, 44119.

(f) In any post-conviction proceeding   John Bay, Spencer Cahoon, and Kris Haines, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio, 43215.

(g) On appeal from any adverse ruling in a post-conviction proceeding   Kris Haines, Office of the Ohio Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio, 43215.

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?

Yes ☐    No ☒

(a) If so, give name and location of court that imposed the other sentence you will service in the future _____

_____

_____

(b) Give the date the other sentence was imposed _____

_____

_____

(c) Give the length of the other sentence _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?

Yes ☐    No ☐

18. TIMELINESS OF PETITION:  If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, petitioner asks that the Court grant the following relief:

A conditional writ of habeas corpus that orders the Ohio courts to retry Mr. King. Or any other relief to which Mr. King may be entitled.

/s/ Jennifer Paschen Bergeron
Signature of Attorney
Jennifer Paschen Bergeron #0075204

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Execute (signed) on _____ (date).

See Exhibit G attached
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

**9(f)    Grounds raised in *State v. King,* 8th Dist. Cuyahoga No. 68726, 1996 Ohio App. LEXIS 4945 (Nov. 14, 1996):**

(1)    It was plain error for the trial court, and a violation of due process under the Ohio and Federal Constitutions, to omit an alibi instruction where the appellant filed a notice of alibi and presented evidence in support of such alibi.  Counsel was also ineffective for failing to object to the trial court's failure to give an alibi instruction.;

(2)    The trial court committed prejudicial error by permitting the prosecutor to suggest in his cross examination of the appellant that the appellant fabricated an alibi defense when there was no good faith belief in such a suggestions.  The appellant was denied due process and his right of confrontation when the state failed to produce evidence in support of such fabrication.;

(3)    Trial counsel was ineffective and the appellant was denied his right to counsel as guaranteed by the State and Federal Constitutions when counsel failed to object and failed to request a mistrial when the state improperly cross examined [sic] the appellant.;

(4)    The admission of prior consistent statements violated Evidence Rule 801(D)(1)(B), was plain error and counsel's failure to object was ineffective assistance of counsel.;

(5)    The evidence is insufficient to sustain the appellant's conviction for murder.; and

(6)    The verdict is against the manifest weight of the evidence.

**9(f)    Motion for Reconsideration of *State v. King,* 8th Dist. Cuyahoga No. 68726, 1996 Ohio App. LEXIS 4945 (Nov. 14, 1996):**

**9(f)    Application to re-open *State v. King,* 8th Dist. Cuyahoga No. 68726, 1996 Ohio App. LEXIS 4945 (Nov. 14, 1996) denied in *State v. King,* 8th Dist. Cuyahoga No. 68726, 1998 Ohio App. LEXIS 5770 (Dec. 1, 1998):**

(1)    Ineffective assistance of appellate counsel prejudiced defendant as a result of the failure of appellate counsel to argue on direct appeal the issue of ineffective assistance of trial counsel. Specifically the applicant argues that trial counsel was ineffective as a result of failing to introduce the coroner's report into evidence during the course of trial.

**9(g)(6) Grounds raised in *State v. King,* 78 Ohio St. 3d 1453, 677 N.E.2d 814 (April 9, 1997):**

(1)    The trial court committed plain error by not instructing the jury on the law of alibi.

(2)    Counsel was ineffective when he failed to request a jury instruction for alibi and when he failed to object to the trial court's failure to give an alibi instruction.

(3)    The appellant's right to due process pursuant to the U.S. and Ohio Constitutions was denied by the omission of an alibi instruction when he filed a notice of alibi and presented evidence in support of such alibi.

**11(b)(5) Grounds raised in *State v. King*, Cuyahoga County Case No. CR 94 312576, Petition for Postconviction Relief, first petition filed May 12, 2010, second amended petition filed September 1, 2010, and third amended petition filed on October 20, 2010.**

(1)   Mr. King is actually innocent of the murder for which he has been incarcerated for more than seventeen years.  The trial court abused its discretion when it overruled Mr. King's petition for postconviction relief, which was based on the results of DNA testing which proved by clear and convincing evidence Mr. King's actual innocence of murder, in violation of Mr. King's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.

**11(b)(5) and 11(d)  Grounds raised in *State v. King*, Case Number 2012-0846 (Ohio, September 5, 2012):**

(1)   Mr. King is actually innocent of the murder for which he has been incarcerated for more than seventeen years.  The trial court abused its discretion when it overruled Mr. King's petition for postconviction relief, which was based on the results of DNA testing which proved by clear and convincing evidence Mr. King's actual innocence of murder, in violation of Mr. King's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.

**11(c)(5) Grounds raised in *State v. King*, Cuyahoga County Case No. CR 94 312576, Civil Rule 60(B), filed June 19, 2014:**

(1)   Mr. King is actually innocent of the murder for which he has been incarcerated for more than twenty years.  The results of DNA testing, if taken with expert testimony refuting the incorrect and misleading testimony of the State's witnesses at trial, prove by clear and convincing evidence Mr. King's actual innocence of murder, in violation of Mr. King's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.  *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995);  *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

(2)   Mr. King's postconviction counsel was ineffective for failing to investigate the veracity of the evidence offered by the State at trial, which purported to undercut the value of DNA testing of the semen recovered from the victim's vagina and rectum.  *Ryan v. Martinez*, 566 U.S. ___, 132 S. Ct. 1309; 182 L. Ed. 2d 272 (2012)

(3)   The State argued and relied upon testimony purported to be scientific in support of the denial of postconviction relief.  The State represented in its arguments to the Court that this testimony was credible and scientific.  However, this testimony is not supported by scientific literature nor the experience of experts in the field.  The State committed misconduct when it argued and relied upon false and misleading testimony.  Due process violations by the State. *Napue v. Illinois*, 360 U.S. 264, 272, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995), *Giglio v. United States*, 405 U.S. 150, 151 (1972)

**11(e) Explanation for why did not appeal to the highest state court having jurisdiction**

11(d)(1) was not exhausted because DNA testing was granted, and Ohio law does not provide an avenue for appeal when postconviction DNA testing is granted

11(d)(3)  Third petition was recently filed and the trial court has not yet ruled

# (12)  GROUNDS AND SUPPORTING FACTS

## I.	Introduction

Crystal Hudson was raped and murdered between 11:00 a.m. on June 21, 1994 and 11:00 a.m. on June 22, 1994.  Tr. 442.  The vaginal and rectal swabs taken from Ms. Hudson at autopsy revealed that the perpetrator, despite removing the sheets from Ms. Hudson's bed to hide the physical evidence of the crime, had left his sperm in Ms. Hudson.  Tr. 292, 651-2; State's Exhibit 35.  The vaginal swabs were tested both at the time of trial and again in postconviction testing completed in 2009.  Tr. 487-90; Exhibit 1, Third Amended Postconviction Petition, Oct. 20, 2010 ("2009 DNA Report").  Evin King was excluded both times.  *Id.*  Additionally, in 2009, a new type of DNA testing was able to produce a male profile from underneath Ms. Hudson's fingernails – that profile was consistent with the profile from the vaginal swabs and excluded Evin King.  2009 DNA Report, Tr. 512; State's Exhibit 35.  However, Mr. King remains in his twentieth year of incarceration for a crime where DNA evidence demonstrates that he is actually innocent.  This is a result of the State's presentation of testimony at the trial that does not comport with scientific literature, models, or studies, and the failure of both trial and postconviction counsel to recognize, investigate, and challenge the State's presentation of incorrect and misleading testimony.  Tr. 457-61, 468-70, 484-88 *contra* Affidavit of Alan Keel ("Keel Affidavit"), attached as Exhibit A; Report of Dr. Daniel Spitz ("Spitz Report"), attached as Exhibit B.  Mr. King is actually innocent – the State's DNA testing, both at trial and postconviction, along with expert affidavits setting out the correct science, model, and data for determining when semen and biological material under fingernails is deposited, demonstrates as much.  *See*, Keel Affidavit, Spitz Report.

## II. Facts

### A. Trial testimony demonstrates that both a rape and murder took place

Crystal Hudson met a violent end. She was sodomized and then beaten and strangled to death, and left naked in her closet sometime between 11:00 a.m. on June 21, 1994 and 11:00 a.m. on June 22, 1994. Tr. 453-4, 455, 439, 442. The perpetrator left his physical mark as well as physical evidence on Ms. Hudson's body. Tr. 443-454; State's Exhibit 35. The coroner found damage to Crystal's rectum and said the damage was consistent with forcing a penis into her rectum. Tr. 450-2. The coroner stated that this occurred at or near the time of Crystal's death, and conceded that this could have been a rape and a murder. Tr. 468. The coroner's report indicates that he found "many" sperm heads in both Crystal's vagina and rectal smears, although few sperm were "intact." State's Exhibit 35. The coroner then sent the swabs he collected for further testing, which included the DNA testing technology available at the time. State's Exhibit 35, Trace Evidence Department. The State proceeded to DNA test the sperm found in Crystal purportedly for use in the prosecution of the perpetrator. *Id.*

Although Crystal was strangled to death, it is also clear that the perpetrator repeatedly beat her prior to killing her. Tr. 442, 464; State's Exhibit 35. The coroner noted that Crystal, while naked, had been hit in the head, body, and her extremities. Tr. 443, 455, State's Exhibit 35. The coroner also testified that it was possible to identify an assailant through fingernail scrapings. Tr. 472-3. Although the coroner did not detect damage to her fingernails, the coroner noted that Crystal's fingernails were quite short and the trace evidence department took fingernail scrapings. *Id.*; State's Exhibit 35; Tr. 472, 512. There was also a wound to the top of Crystal's head. Tr. 452-3. Crystal did not go easily. After the beating and the rape Crystal was still not dead. Her killer stood behind her, wrapped a ligature around her neck, and pulled and tugged for almost 4 minutes until Crystal stopped breathing and died. Tr. 443, 447-50, 454.

Then the killer picked Crystal up and tossed her in the closet. Tr. 439, 455. The perpetrator took the bed sheets from Crystal's bedroom hoping to remove the physical evidence of the sex, beating, and struggle. Tr. 292, 562, 651-2. However, the close physical contact between Crystal and her killer meant that the killer left evidence behind, and Crystal left physical evidence on the killer. *See* State's Exhibit 35; 2009 DNA Report. This is why, when police arrested Evin King, they checked him and his clothing for any of Crystal's blood or any fibers from Crystal's bedroom that would show he was the killer. Tr. 515-17; State's Exhibit 35. They found nothing. Tr. 521-522. The rest of the physical evidence, points to another man – never found by police. Tr. 488-490; 2009 DNA Report.

### B. State offers incorrect and misleading testimony to discount exclusionary DNA results

Despite the circumstantial evidence offered in this case and the 1994 DNA results, the jury convicted Mr. King. The conviction resulted from testimony that the State knew or should have known was false and misleading. Tr. 457-61, 468-70, 484-88 *contra* Keel Affidavit, Spitz Report. Dr. Challener, the chief deputy coroner in Cuyahoga County, testified for the State. Tr. 433. Dr. Challener testified that the anal penetration of Ms. Hudson, likely by a penis, occurred at or near the time of her death, and that the scrapes and injuries to Ms. Hudson's chest occurred when she did not have any clothes on. Tr. 450-2, 455. Yet, he also testified that it was unlikely that the sperm found in Hudson's rectum and vagina were also deposited at or near the time of her death. Tr. 457-61. Contrary to the autopsy report, Dr. Challener also testified that he found "few sperm" in Ms. Hudson's vagina and rectum, and the few sperm heads meant that if they were recently deposited he would expect to find many of the sperm "intact." Tr. 458-9. Based on these findings, Dr. Challener opined that it was "very unlikely" that the sperm were deposited contemporaneously with the anal penetration of Ms. Hudson. Tr. 459.

Kay May, a forensic serologist in Cuyahoga County's trace evidence department, examined the oral, vaginal, and anal swabs from Ms. Hudson. Tr. 483. The oral swabs tested negative for trace evidence. Tr. 485. May testified that the anal swabs were positive for acid phosphate ("AP"), negative for p30, and she detected few sperm heads. *Id*. May concluded that the sperm were deposited "beyond 16 hours." *Id*. May also testified that the vaginal swabs were positive for AP, negative for p30, and contained few sperm heads. Tr. 486-7. May testified that she found no intact sperm on the vaginal swab slide, and again testified that these sperm were deposited prior to Hudson's death. Tr. 487. Finally, May testified that the DNA testing showed that King was not the person who deposited the semen. Tr. 489. While some sperm tails could have been sheared off when May made her "dry slides," the dry slides should reflect those wet slides made and noted by Dr. Challener in the autopsy report. Keel Affidavit; State's Exhibit 35.

Thus, there were several inconsistencies in the trial testimony, including regarding 1) the number of sperm observed (Dr. Challener's testimony versus the autopsy report); 2) the number of sperm with tails (Dr. Challener's testimony versus Kay May's testimony); and 3) the substance of Kay May's testimony versus the autopsy report. Yet none of the inconsistencies or their meaning was highlighted by trial counsel, nor did the State correct the erroneous testimony for the jury. Beyond the inconsistencies, the incorrect and misleading statements made by Challener and May were never corrected by the State, nor challenged by King's trial counsel. Keel Affidavit; Spitz Report. Finally, trial counsel never requested materials (autopsy slides, Kay May's slides, bench notes, DNA and serology data, evidence photos, etc.) for an independent assessment. As a result, the jury verdict, as well as all subsequent decisions of the state court in this case, was based on the erroneous and misleading testimony of Challener and May.

## C. Postconviction DNA testing produces results which further demonstrate actual innocence

Evin King first applied for postconviction DNA testing in 2004. Application for Postconviction DNA Testing, Oct. 25, 2004. On April 23, 2008, the trial court granted postconviction DNA testing for Mr. King. Findings of Fact and Conclusions of Law, April 23, 2008. Testing was conducted at the Cuyahoga County Coroner's Office, which produced a two page report dated January 29, 2009. 2009 DNA Report. The 2009 DNA Report stated that new Y-STR DNA technology was able to reveal a partial male DNA profile underneath Ms. Hudson's fingernails. *Id*. The 2009 report also stated that the partial profile from the fingernails was consistent with the complete Y-STR DNA profile from the sperm the perpetrator left in Hudson's vagina. *Id*. The 2009 Report also produced a complete STR profile. *Id*. Unfortunately, the Cuyahoga County Coroner's report indicates that it searched, rather than uploaded, the STR profile. *Id*. Additionally, the search was only conducted of the Ohio database rather than the national CODIS database. *Id*.; *See generally State v. Hildwin*, Case No. SC10-1082, 2011 Fla. LEXIS 2693, 36 Fla. L. Weekly S 647 (Nov. 10, 2011) (distinguishing search versus upload). As a result, the profile was only compared to those DNA profiles on file in the Ohio database in 2008. 2009 DNA Report. Evin King was excluded from all the DNA profiles recovered from the semen and fingernail scrapings of Crystal Hudson. *Id*. In comparison to the compelling physical evidence, the evidence used to convict Mr. King was circumstantial. Findings of Fact and Conclusions of Law, April 23, 2008 (Journal Entry granting postconviction DNA testing). Police initially arrested Evin King because he was one of many people who had access to Crystal's apartment, he was in the apartment when her body was found, and Crystal's mother told police of her "premonition" that Evin killed Crystal. Tr. 301, 336, 388, 543-4, 552-3, 658, 397-99.

Despite receiving two sets of DNA results over the years that exonerate Mr. King, the trial court disregarded the results because the exclusion on the vaginal swabs was already considered by the jury at trial and simply connected the results from the fingernail scrapings to the person that the jury had previously disregarded. Findings of Fact and Conclusions of Law, Nov. 15, 2011 (Journal Entry denying postconviction relief). The appellate court was not swayed so easily and issued three separate opinions in a split decision which ultimately upheld the denial of relief. *State v. King*, 8th Dist. Cuyahoga No. 97683, 2012-Ohio-4398. The exonerative DNA test results were repeatedly discarded by the state courts based on unsupported, false, and misleading trial testimony – testimony which the State has not only repeatedly failed to correct, but has continued to utilize in arguments requesting denial of relief for Mr. King.

**D.**     ***Martinez* review uncovers overwhelming evidence of actual innocence and the State's continued resistance to turn over exculpatory evidence**

Upon the assignment of new postconviction counsel, Assistant State Public Defender Carrie Wood ("Attorney Wood"), case materials were sent to two separate experts for review. Affidavit of Carrie Wood ("Wood Affidavit"), attached as Exhibit F. On January 21, 2014, Attorney Wood requested copies from Alan Regas, Assistant Prosecuting Attorney at the Cuyahoga County Prosecutor's Office ("Attorney Regas") of the discovery provided to trial counsel and copies of the underlying lab notes, electropherograms, allelic charts, etc. from the postconviction DNA testing. *Id.*She also requested that counsel be notified of any hit if the DNA profile generated from postconviction DNA testing was, in fact, uploaded to CODIS. *Id.* This letter received no response, so Attorney Wood telephoned Attorney Regas, on February 19, 2014. During that call, Attorney Wood made an additional request that the STR DNA profile be run through CODIS, rather than just the Ohio database, pursuant to R.C. 2953.74(E). *Id.* Attorney Regas stated that he would not take any action with respect to DNA testing without a court order. Attorney Regas stated that he would review the file and determine if there was

anything that he could provide Attorney Wood. On April 15, 2014, Attorney Regas provided Attorney Wood with copies of only those exhibits on file at the court house. *Id.* These did not include autopsy photos, bench notes, or any of the other materials Attorney Wood had requested. *Id.* In addition, as those are available to the public and part of the record, Attorney Wood was already in possession of those materials. *Id.* Attorney Regas refused to provide any additional information requested. *Id.* Attorney Wood followed up with more specific requests as a result of her conversation with the experts in an email to Attorney Regas on April 18, 2014. *Id.* Attorney Regas has never responded to this email. *Id.*

Prior to contacting Attorney Regas, Attorney Wood had reached out to all parties that handled the estate of Rocco Russo, Evin King's trial counsel. *Id.* However, Attorney Wood was unable to locate the file of trial counsel. *Id.* Attorney Wood also contacted the Cuyahoga County Coroner's Office ("CCCO") to request copies of and/or a list of evidence in its possession. *Id.* While the CCCO acknowledged the existence of requested evidence and photos, the CCCO informed Attorney Wood that the Cuyahoga County Prosecutor's Office informed them that a "full response was not proper at this time." *Id.*

Despite the State's refusal to provide any of the case materials requested by Attorney Wood, the trial testimony of Dr. Challener and Kay May was so inconsistent with each other, the autopsy report, and, most importantly, scientific literature and the experience of experts in their relevant fields, that the experts consulted by Attorney Wood called into question almost all aspects of the testimony with respect to the determination that the semen had been deposited prior to the time of death.

Alan Keel, whose expertise has been utilized by the prosecution in the State of Ohio, stated that Dr. Challener's testimony that if semen were deposited contemporaneously with Ms. Hudson's death "you would expect them (sperm) to be well-formed, numerous, and intact" was

not compatible with his experience or the scientific literature. Keel Affidavit, p. 11. This was true both at the time of Mr. King's trial, as well as during postconviction proceedings. *Id*. at pp. 10-12, ¶¶ 19, 22-3. Keel stated that "[t]he finding of a number of intact sperm present on the vaginal and rectal smears slides supports, rather than undermines, the conclusion that the semen was deposited contemporaneously with death." *Id*., p. 12. Keel also stated that Kay May's testimony regarding the meaning of the p30 results did not comport with the scientific literature, both at the time of King's trial as well as during King's postconviction proceedings. *Id*. at pp. 10-12, ¶¶ 19, 22-7. In addition, Keel noted that – given the condition of the body and the susceptibility of p30 results to environmental conditions – these results were meaningless in an evaluation of when the semen was deposited. *Id*., p. 13. Keel also stated that Kay's testimony that the AP results would place the time of the semen deposit 7 days prior to Hudson's death was without foundation. *Id*., p. 13-14. Dr. Spitz also took issue with the conclusions of both Challener and May. Spitz Report.

Keel noted that the 2009 DNA Report, along with the 1994 DNA test results, provided additional insight into when the sperm was deposited. Keel Affidavit, pp. 15-18. Keel took note of the fact that, despite the tendency of female DNA to drown out male DNA, sperm was present in such abundance that this "overwhelm" did not occur either in 1994 or 2009. *Id*.

In conclusion, Keel cited the following in support of the hypothesis that the semen present in the vagina and rectum of Ms. Hudson was deposited contemporaneously with her death rather than two-to-three or even seven days before her death:

    i)    Dr. Challener's initial autopsy report description of the presence of "many" sperm present on both the vaginal and rectal smear slides.

    ii)    The presence of intact sperm on both the vaginal and rectal smear slides when no or few sperm in any condition would be expected to persist after two to three living days and at least one deceased day under the conditions in which Ms. Hudson's body was rapidly decomposing.

iii) The de-bunking of Ms. May's testimony that p30 will persist no more than 16 hours after being deposited as proof the semen was deposited more than 16 hours prior to her death.

iv) The de-bunking of Ms. May's testimony that she detected AP activity from the semen which can persist in the vagina for up to seven days despite detecting no p30 from the semen.

v) The robust and clean DNA analysis results demonstrate the presence of numerous sperm.

vi) The presence of biology from Unknown Male #1 in the fingernail scrapings from the victim compatible with semen from Unknown Male #1 also demonstrates that this biological evidence was likely deposited during close and intimate contact contemporaneous with the victim's death.

vii) The finding of biology from Unknown Male #1 associated with other physical evidence from the crime scene would further establish the relevance of the semen and fingernail-scraping evidence to Ms. Hudson's killing.

*Id.*, p. 18-19. Keel requested additional materials, which have never been provided by the State to Mr. King or his counsel to fully assess the case. *Id.*, p. 19. Dr. Spitz highlighted both Dr. Challener's and May's failure to take into account that the autopsy was performed, and the samples were collected 26.5 hours **after** Ms. Hudson's body was discovered. Spitz Report. Additionally, Dr. Spitz, citing a 2001 scientific study, concluded that the sperm deposition, rectal trauma, and death all occurred around the same time. *Id.*

**Claims for relief**

I. **Evin King is actually innocent of Crystal Hudson's murder. His conviction violates the U.S. Constitution. U.S. Const. Amend. V, VIII, XIV. *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).**

Supporting Facts:

Evin King did not rape or murder Crystal Hudson. King's actual innocence is demonstrated by DNA test results from 1994 and 2009. As a result, King's conviction violated his rights under the United States Constitution. *Souter v. Jones*, 395 F.3d 577, 596 n. 11 (6th Cir. 2005). As explained above, the victim in this case was brutally raped and murdered – DNA from the semen in the victim's vagina is consistent with the DNA from underneath the victim's fingernails and Evin King is excluded as the source of that DNA. The trial testimony offered by the State, in an effort to explain away the DNA results after they had arrested Mr. King, does not comport with the scientific literature either at the time of trial or today. In fact, the scientific literature and the DNA test results support the conclusion that the semen was deposited contemporaneously to Ms. Hudson's rape and murder. Mr. King incorporates all the introduction and facts above into this claim. *See* pp. 22-30.

Our constitutional safeguards are to prevent what has happened to Mr. King – the conviction of an innocent man. This plainly violates the United States Constitution.

**II.**    **Evin King is actually innocent of Crystal Hudson's murder. Mr. King's accompanying Constitutional claims must be adjudicated.  U.S. Const. Amend. V, VIII, XIV.  *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).**

Evin King did not rape or murder Crystal Hudson.  King's actual innocence is demonstrated by DNA test results from 1994 and 2009.  As a result, King's conviction violated his rights under the United States Constitution.  *Souter v. Jones*, 395 F.3d 577, 596 n. 11 (6th Cir. 2005).  As explained above, the victim in this case was brutally raped and murdered – DNA from the semen in the victim's vagina is consistent with the DNA from underneath the victim's fingernails and Evin King is excluded as the source of that DNA.  The trial testimony offered by the State, in an effort to explain away the DNA results after they had arrested Mr. King, does not comport with the scientific literature either at the time of trial or today.  In fact, the scientific literature and the DNA test results support the conclusion that the semen was deposited contemporaneously to Ms. Hudson's rape and murder.  Mr. King incorporates all the introduction and facts above into this claim.  *See* pp. 22-30.

Mr. King's demonstration of his actual innocence more than satisfies the gateway showing required under *Schlup* to overcome procedural default, statute of limitations, and any other non-jurisdictional barriers.

**III.    The new evidence presented is so compelling that it would be a violation of fundamental fairness embodied in the Due Process Clause of the U.S. Constitution not to afford Evin King a new trial where new evidence would be considered.  U.S. Const. Amend. V, and XIV.  *Coogan v. McCaughtry*, 958 F.2d 793 (7th Cir. 1992); *Walter v. Lockhart*, 763 F.2d 942, 961 (8th Cir. 1985) (en banc) (Arnold, J. concurring), cert denied, 478 U.S. 1020, 106 S. Ct. 3332 (1986).**

Evin King did not rape or murder Crystal Hudson.  King's actual innocence is demonstrated by DNA test results from 1994 and 2009.  This DNA evidence, accompanied by the affidavits of Alan Keel and Dr. Daniel Spitz provide evidence so compelling that it would violate the Due Process clause not to afford Mr. King a new trial.  *Han Tak Lee v. Franklin Tennis*, Civil No. 4:08-CV-1972, Magistrate's Report and Recommendation (M.D. Penn June 13, 2014), following remand from *Lee v. Glunt*, 667 F.3d 397 (3d Cir. 2012).  As explained above, the victim in this case was brutally raped and murdered – DNA from the semen in the victim's vagina is consistent with the DNA from underneath the victim's fingernails and Evin King is excluded as the source of that DNA.  The trial testimony offered by the State, in an effort to explain away the DNA results after they had arrested Mr. King, does not comport with the scientific literature either at the time of trial or today.  In fact, the scientific literature and the DNA test results support the conclusion that the semen was deposited contemporaneously to Ms. Hudson's rape and murder.  Mr. King incorporates all the facts above into this claim.  *See* pp. 22-30.  The newly presented evidence is so compelling that Mr. King should be afforded a new trial.

**IV.** **Mr. King was denied the effective assistance of trial counsel.** *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

    **(a)** failure to investigate and rebut the testimony of the State's coroner and serologist

    **(b)** failure to impeach

    **(c)** failure to consult on expert

    **(d)** ineffective cross of the state's expert

    **(e)** failure to call an expert

    **(f)** failure to object to trial court's failure to give alibi instruction

    **(g)** failure to object and request a mistrial when prosecutor suggested in his cross-examination of Mr. King that Mr. King fabricated his alibi

    **(h)** failure to object to the introduction of prior consistent statements in violation of Evidence Rule 801(D)(1)(B)

    **(i)** failure to object to unsupported testimony regarding a witness's premonition

Mr. King incorporates all the facts above into this claim. *See* pp. 22-30.

**(a)-(e) Trial counsel was ineffective regarding expert testimony.**

As each of the five specific failings listed in Grounds IV(a)-(e) are intertwined, they are described in the facts set forth below.

Trial counsel failed to investigate or adequately challenge the State's forensic evidence at trial. The State had the vaginal swabs taken at Crystal Hudson's autopsy subjected to DNA testing at the time of trial. Tr. 489; State's Exhibit 35. Even after the results excluded Evin King, the State continued in its prosecution of Mr. King. To discount its own DNA test results, the State offered the testimony of the coroner who concluded that, based on observing **very few sperm** and few sperm with tails, the sperm were deposited two to three days before the murder and rape. Tr. 458-9, 450-52.

Although trial counsel passed away in 2005 and his trial files were never obtained by appellate or postconviction counsel, the record demonstrates that trial counsel never consulted with an expert regarding the coroner's conclusions. If he had, he would have known that sperm density is the primary factor in approximating time of deposit. Keel Affidavit. As a result, trial

counsel would have – at minimum – impeached the coroner with his autopsy report as the autopsy report stated "few intact sperm and **many sperm** head in vaginal and rectal smears." State's Exhibit 35 ("Autopsy Report"), p. 4. The failure to complete this basic impeachment, which would undercut the primary basis for the coroner's and serologist's conclusions provides clear evidence that trial counsel did not consult with an expert. In fact, trial counsel objected to the introduction of the autopsy report with the exculpatory information into evidence. Tr. 721.

In addition, had trial counsel consulted with an expert, he would have requested, for purposes of his expert's review, the following items:

1. Dr. Challener's vaginal and rectal smear slides from Hudson.
2. Kay May's vaginal and rectal cell debris slides from Hudson.
3. Inventory of evidence collected from the Hudson crime scene with particular attention to Hudson's clothing and undergarments.
4. Kay May's laboratory notes, including DNA testing notes and records including the DNA typing electropherograms.

Keel Affidavit *contra* Evin King's Motion for Discovery and to Examine Exculpatory and Mitigatory Material, July 18, 1994. There is no evidence indicating that trial counsel ever requested these items. In addition – even if the vaginal and rectal smears contained few sperm – the conclusions of the coroner and serologist remain flawed and rely on incorrect statements of the science to make a time of deposit estimation. Keel Affidavit. Had trial counsel consulted an expert, he would have called an expert at Mr. King's trial to rebut the incorrect and misleading science presented by Dr. Challener and Kay May. Keel Affidavit. Trial counsel discussed the case with Dr. Challener prior to trial. Tr. 469-70. However, it is clear that trial counsel simply accepted Dr. Challener's testimony as correct. Tr. 434. The fact that none of this testimony was the subject of cross-examination indicates that no expert was consulted by trial counsel. The record makes plain that trial counsel failed to call an expert to rebut the State coroner's and serologist's erroneous assumptions, facts, and conclusions.

**(f)    Trial counsel was ineffective for failing to object to the trial court's failure to give an alibi instruction.**

Mr. King gave notice of and presented alibi evidence at trial.  Tr. 737-8, 806-874.  The standard jury instruction in Ohio on alibi at the time of Mr. King's trial was found at 411.03 of the Ohio Jury Instructions.  In part, the instruction stated:

> \*\*\*

> If, after a consideration of the evidence of alibi, along with all the evidence, you are not convinced beyond a reasonable doubt that the defendant was present at the time in question, you must return a verdict of not guilty.

Despite the presentation of alibi evidence, the trial court failed to read this standard jury instruction.  Tr. 1231-44.  In addition, trial counsel failed to object when the trial court failed to read this instruction.  *Id*.  When the physical evidence points to another individual and the remaining evidence is tenuous, the prejudice of this failure to have the jury properly instructed on King's theory of defense and the applicable law is demonstrated by Mr. King's conviction.

**(g)    Trial counsel was ineffective for failing to object and request a mistrial when the prosecutor suggested in his cross examination of Mr. King that Mr. King fabricated his alibi.**

When the State cross examined Mr. King, the State suggested that King was attempting to fabricate his alibi by asking whether the defense had subpoenaed Maurice Pugh – which they had - and whether Mr. King had asked Maurice Pugh to lie for him.  Tr. 903-5.  The State had no good faith basis to ask this second question.  Tr. 1126-1138.  The State actually called Pugh to the stand, and he testified that he talked to defense counsel for the first time that day in court.  Tr. 1131, 1134.  Pugh testified that he and King were in jail together, and they had known each other for three years.  Pugh testified that he did not discuss the case with King.  Tr. 1126-27.  Pugh testified that King had been over at his house, and King only asked Pugh if he remembered the exact date that King was at his house.  Tr. 1127-29.  Pugh testified that he told King that he could not recall.  *Id*.  Trial counsel failed to object when the State asked Mr. King these

questions, and again when the State called Mr. Pugh to the stand and his testimony made clear that the State did not have a basis to ask those questions. Tr. 903-5, 1126-1138.

**(h) Trial counsel was ineffective for failing to object to the introduction of prior consistent statements in violation of Evidence Rule 801(D)(1)(B).**

Brandi Hudson testified at trial that Evin King was not in her mother's apartment when Brandi went to check on her mother on Tuesday, June 21, 1994 at 11:00 a.m. Tr. 309-12, 346-7. Detective O'Malley, in his testimony, repeated an unsworn statement attributed to Brandi Hudson in a police report. Tr. 556-8. The unsworn statement, typed and witnessed by detectives other than Detective O'Malley, includes Brandi's initial narrative where it states that she saw Mr. King on the couch in her mother's apartment on Wednesday, June 22, 1994. State's Exhibit 26. However, later in the statement Brandi, responding to a question about June 21, 1994, states that Mr. King was on the couch. *Id.* It is only this second statement that Detective O'Malley testified to. Tr. 556. Mr. King's trial counsel failed to object to this impermissible hearsay testimony. Tr. 556-8. Additionally, Brandi denied the truthfulness of the second statement in the police report that King was present in her mother's apartment on Tuesday morning and confirmed that the narrative in the police report were correct. Tr. 309-12. Therefore, the introduction of her purported second statement was improper as the State used Detective O'Malley's testimony to improperly bolster only the later statement in the report. Tr. 556-8. Finally, Brandi Hudson had previously testified and was subject to cross examination. During her testimony, she was asked to read – without objection – her purported prior statement as written by police officers. The failure to object to hearsay, impermissible impeachment of the State's own witness, and impermissible bolstering constitutes deficient performance.

**(i) Trial counsel was ineffective for failing to object to a witness's admittedly unsupported testimony that she had a premonition that Mr. King killed Crystal Hudson.**

On direct exam, the State elicited testimony from Sally El, Crystal Hudson's mother, that she had a premonition that her daughter was dead prior to her body being discovered and that she confronted Mr. King and asked if he had killed Crystal. Tr. 377. El admitted that she did not think her daughter was dead, and "it just came out." *Id*. There was no objection from trial counsel. *Id*. On cross, El admitted that her feeling was a premonition, but she did not follow up on it because no facts supported it. Tr. 388. El also stated that her daughter stayed away for a day or two at a time on several occasions and it was not out of the ordinary. *Id*. Detective Matuszny repeated El's premonition and accusation to the jury without objection from trial counsel. Tr. 658. There is absolutely no evidentiary basis for El's admittedly baseless "premonition" and accusation to be admitted into evidence, yet trial counsel failed to object. The deficiency of trial counsel in its failure to object to use of a baseless premonition as evidence is deficient.

For any or all of the reasons explained above regarding (a)-(i), trial counsel was ineffective. Had trial counsel not been deficient in performance, Mr. King would have never been convicted.

**V.** **Mr. King was denied the effective assistance of appellate counsel.** *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Mr. King incorporates all the facts above into this claim. *See* pp. 22-30.

**(a)** **Appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel for the failure to object to the witness's admittedly unsupported testimony that she had a premonition that Mr. King killed Crystal Hudson.**

On direct exam, the State elicited testimony from Sally El, Crystal Hudson's mother, that she had a premonition that her daughter was dead prior to her body being discovered and that she confronted Mr. King and asked if he had killed Crystal. Tr. 377. El admitted that she did not think her daughter was dead, and "it just came out." *Id*. There was no objection from trial counsel. *Id*. On cross, El admitted that her feeling was a premonition but she did not follow up on it because no facts supported it. Tr. 388. El also stated that her daughter stayed away for a day or two at a time on several occasions and it was not out of the ordinary. *Id*. Detective Matuszny repeated El's premonition and accusation to the jury without objection from trial counsel. Tr. 658. There is absolutely no evidentiary basis for El's admittedly baseless "premonition" and accusation to be admitted into evidence, yet trial counsel failed to object. The deficiency of trial counsel in its failure to object to use of a baseless premonition as evidence is deficient. Appellate counsel failed to raise this issue on direct appeal.

**(b)** **Appellate counsel failed to notify Mr. King of postconviction issues and deadlines.**

Attorney Wood corresponded with John Parker, Mr. King's counsel on direct appeal, and obtained his file. Wood Affidavit. Attorney Parker informed Attorney Wood that his file on a direct appeal would contain only his notes from reading the transcript, his research, and a copy of his brief and motions. *Id*. Attorney Parker stated that there could be letters to or from the client. Since the direct appeal is limited to the record, Attorney Parker stated that he almost never

requested the trial attorney's file. *Id*. Attorney Wood reviewed Attorney Parker's file, which included all the items Attorney Parker mentioned, including client correspondence. *Id*. There was no correspondence to Mr. King regarding postconviction deadlines or potential issues. *Id*. Accordingly, Attorney Parker's file reveals that he failed to advise Mr. King regarding postconviction deadlines or potential issues.

**VI. Mr. King was denied the effective assistance of postconviction counsel.** *Ryan v. Martinez*, **566 U.S. ___, 132 S. Ct. 1309; 182 L. Ed. 2d 272 (2012);** *Strickland v. Washington*, **466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).**

    **(a)**    **failure to investigate and rebut the testimony of the State's coroner and serologist**

    **(b)**    **failure to impeach**

    **(c)**    **failure to consult an expert**

    **(d)**    **ineffective cross of the state's expert**

    **(e)**    **failure to call an expert**

Supporting Facts:

As each of the five specific failings listed in Grounds VI(a)-(e) are intertwined, they are described in the facts set forth below. Mr. King also incorporates all the introduction and facts above into this claim. *See* pp. 22-30.

Postconviction counsel applied for postconviction DNA testing on behalf of Evin King in 2004. Given the year, this application fell under Ohio Senate Bill 11 ("SB11"), and the trial court granted postconviction DNA testing. Findings of Fact and Conclusions of Law, April 23, 2008. The vaginal swabs were tested again, and the fingernail scrapings were tested for the first time. In 2009, the results indicated that both an STR and a Y-STR profile were produced from the vaginal swabs. 2009 DNA Report. The Cuyahoga County Coroner's Office only searched the local Ohio database. *Id*. The national CODIS database was not searched, despite the clear statutory authority under Ohio law to do so. R.C. 2953.74(E). If the unknown profile had been uploaded to CODIS, rather than just searched, the profile would have continued to be compared to any new DNA profiles added to the CODIS system. For example, Cuyahoga County – where this crime occurred – has been testing rape kits in a number of old, unsolved rape cases. The Federal Bureau of Investigation (FBI) officially launched its nationwide DNA database for NDIS-participating law enforcement agencies in October 2008.[1] The U.S. National DNA Index System (NDIS) database of the Combined DNA Index system (CODIS) links all 50 states in the

---

[1] http://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis-and-ndis-fact-sheet (accessed June 18, 2014).

United States with the capability to search criminal DNA profiles.  DNA databases around the world have revolutionized the ability to use DNA profile information to link crime scene evidence to perpetrators.  As of May 2014, the NDIS database contains more than 10.9 million STR profiles.[2]  The processing of backlog in state crime labs has significantly increased the number of profiles in the database since 2009.[3]  Numerous profiles from Cuyahoga County are among these additions.[4]  Although NDIS and  CODIS play and increasing role in solving crimes, postconviction counsel failed to request the more robust search or upload permitted under Ohio statute.  The State refused to do so when Attorney Wood made the request.  Wood Affidavit.

Additionally, postconviction counsel only received a two page DNA report.  2009 DNA Report; Affidavit of Attorney Kris Haines ("Haines Affidavit"), attached as Exhibit E.  Postconviction counsel did not request or obtain any of the underlying DNA reports that would provide the amounts of DNA, among other important information.  If postconviction counsel would have consulted with an expert, they would have requested these items.  Specifically, at minimum, postconviction counsel would have requested:

1. Post-conviction DNA testing notes and records including the DNA typing electropherograms.

2. All CODIS search records on the genetic profile for the Unknown Male sperm source, and if the search has been limited to Ohio, a search of the entire national CODIS library.

Keel Affidavit; Haines Affidavit.

Had postconviction counsel consulted with an expert, they would have obtained the information listed above, along with a number of additional items at least for purposes of the

[2] http://www.fbi.gov/about-us/lab/biometric-analysis/codis/ndis-statistics (accessed June 18, 2014).
[3] http://www.nij.gov/topics/forensics/lab-operations/evidence-backlogs/Pages/convicted-offender-arrestee-samples.aspx (accessed June 18, 2014).
[4] http://www.cleveland.com/rape-kits/index.ssf/2013/08/reinvestigating_rape_old_evide.html (accessed June 18, 2014); http://www.cleveland.com/rape-kits/index.ssf/2014/05/100_rape_kit_indictments_what.html (accessed June 18, 2014).

hearing held on the postconviction petition. *Id.*; Spitz Report. This information is important because the lab notes likely contain information about the amount, and possibly the density of the sperm in the sperm fraction of the STR DNA profile. Again, this information would assist in providing information about the time the sperm was deposited in relation to the time of death, as well as providing information about the identity of the perpetrator. Keel Affidavit.

In addition to testing the vaginal swabs, the fingernail scrapings of the victim were tested. 2009 DNA Report. As a result of the female overwhelm effect, STR DNA testing did not produce results on the fingernail scrapings. *Id.*; Keel Affidavit. However, Y-STR DNA testing – which isolates and tests only male DNA in the sample – revealed a partial profile which was consistent with the complete Y-STR DNA profile obtained from the vaginal swab of the rape kit. *Id.* While the Y-STR profile clearly provided enough information to make it suitable for comparison, the profile and the underlying lab reports that would have indicated the amount of male DNA were not obtained. *Id.* New studies conducted of DNA testing of fingernail scrapings after light and heavy scratching indicate that the amount of DNA under the fingernails can provide insight into how recently the profile under the fingernails came into contact with the fingernails. Keel Affidavit.

When postconviction counsel failed to consult with an expert – of any kind – counsel failed to appreciate the meaning of the information he had as well as what additional information was necessary to fully give meaning to the DNA results obtained. Postconviction counsel's strategy was to demonstrate to the trial court that DNA test results were exonerative. By failing to consult with an expert, thoroughly research the science, request necessary documents and case materials, or conduct the most basic investigation, postconviction counsel failed to take any steps to accomplish this strategic goal. Haines Affidavit.

Additionally, through the failure to consult any experts, postconviction counsel repeated the failures of trial counsel. This is especially troubling considering that postconviction counsel was specifically seeking DNA testing and litigating the results of that testing. Despite the glaring contradiction between the facts asserted in the testimony of the coroner and serologist and the autopsy report (both of which were in the possession of postconviction counsel), postconviction counsel failed to investigate or adequately challenge the State's forensic evidence at trial. The State had the vaginal swabs from the rape kit taken at Crystal Hudson's autopsy subjected to DNA testing at the time of trial. Even after the results excluded Evin King, the State continued in its prosecution of Mr. King. The State discounted the results that it had sought at trial. At trial, the State offered the testimony of the coroner who stated that, based on observing **very few sperm** and few sperm with tails, stated that the sperm were deposited two to three days before the murder and rape. Tr. 458-9, 450-52.

Postconviction counsel admitted that he did not contact or consult with an expert as he did not know that this was necessary. Haines Affidavit. If he had, he would have known that sperm density is the primary factor in approximating time of deposit. Haines Affidavit; Keel Affidavit; Spitz Affidavit. As a result, postconviction counsel would have – at minimum – noted the discrepancy between the testimony of the coroner and the serologist and the autopsy report, which stated, "few intact sperm and **many sperm** head in vaginal and rectal smears." State's Exhibit 35 ("Autopsy Report"), p. 4. The failure to note that the primary basis for the coroner's and serologist's conclusions was unsettled based on the trial record demonstrates the prejudice from the failure to consult with an expert or experts. Again, had counsel consulted with an expert, he would have requested, for purposes of his expert's review, the following items:

1. Dr. Challener's vaginal and rectal smear slides from Hudson.
2. Kay May's vaginal and rectal cell debris slides from Hudson.
3. Inventory of evidence collected from the Hudson crime scene with particular attention to Hudson's clothing and undergarments.

4.     Kay May's laboratory notes, including DNA testing notes and records including the DNA typing electropherograms.

Keel Affidavit.  In addition – even if the vaginal and rectal smears contained few sperm – there are a number of assumptions that the coroner and serologist were required to make in order to conclude that the time of deposit was 2 days before the murder.  The fact that none of this information was requested indicates that postconviction counsel was ineffective.

**VII. The State violated Mr. King's due process rights when it failed to correct false testimony.** *Napue v. Illinois,* 360 U.S. 264, 272, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).

At trial the State introduced the Dr. Challener's autopsy report – which is contradictory to the testimony of both Dr. Challener and Kay May. The State never corrected the testimony of either Challener or May, or the autopsy report. More importantly, the State witnesses testified to statements that did not comport with science but represented that they were scientifically sound. Keel Affidavit; Spitz Report. At trial, the State failed to correct the false testimony. This failure continued in postconviction where the State continued to point to and rely upon this false and misleading testimony. Mr. King incorporates all the facts above into this claim. *See* pp. 22-30.

**VIII. The State violated Mr. King's due process rights when it failed to disclose favorable evidence in the possession of persons or organizations acting on the government's behalf.** *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

The State failed to disclose the the of the microscopic slides prepared at the autopsy of Crystal Hudson (including the wet smear slides of the oral, vaginal, and rectal swabs), all of the microscopic slides prepared from evidence in this case by the Cuyahoga County Crime Lab during the examinations in 1994 (including the dry slides prepared by Kay May of the vaginal and rectal swabs), and all of the laboratory bench notes prepared during examination and testing of the evidence in this case in 1994, including original-quality photographs of the DNA quantification assays and DQA1/Polymarker test strips (as .jpg files where they exist). In postconviction, the State again failed to disclose:

i)   All of the microscopic slides prepared at the autopsy of Crystal Hudson;

ii)  All of the microscope slides prepared from evidence in this case by the Cuyahoga County Crime Lab during the examinations in 1994 and 2009;

iii) All of the laboratory bench notes prepared during examination and testing of the evidence in this case in 1994, including original-quality photographs of the DNA quantification assays and DQA1/Polymarker test strips (as .jpg files where they exist);

iv)  All of the laboratory bench notes prepared during examination and testing of the evidence in this case in 2009, including photographs as .jpg files, print-outs and electronic files of the automated DNA quantification assay, and print-outs and electronic .fsa files of the PowerPlex and Yfiler data and electropherograms;

v)   All of the CODIS records generated from the search(es) referenced in Dr. Butt's January 29, 2009 report and any subsequent search records;

vi)  A complete inventory of all of the physical evidence collected from the Hudson apartment/crime scene so that at least the potential to locate additional biological evidence from Ms. Hudson's killer can be determined.

These materials and documents contain exculpatory information for Mr. King. Keel Affidavit; Spitz Affidavit. If the State had disclosed these exculpatory items, Mr. King would have been

acquitted at trial, or exonerated in postconviction. The State has repeatedly failed to correct its failure to disclose this exculpatory information. Mr. King also incorporates all the facts above into this claim. *See* pp. 22-30.

**IX.**  **The State violated Mr. King's due process rights when it presented perjured testimony of persons acting on the government's behalf.**  *Giglio v. United States,* **405 U.S. 150, 151 (1972).**

At trial the State introduced the Dr. Challener's autopsy report – which is contradictory to the testimony of both Dr. Challener and Kay May.  The State never corrected the testimony of either Challener or May, or the autopsy report.  More importantly, the State witnesses testified to statements that did not comport with science but represented that they were scientifically sound.  Keel Affidavit; Spitz Affidavit.  At trial, the State failed to correct the false testimony.  This failure continued in postconviction, where the State continued to point to and rely upon this false and misleading testimony.  Mr. King incorporates all the facts above into this claim.  *See* pp. 22-30.